# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JOSIP PIACUN,** | **CIVIL ACTION** |
|     **Plaintiff** | |
| **VERSUS** | **NO. 15-2963** |
| **BP EXPLORATION & PRODUCTION, INC., ET AL.,** | **SECTION: "E"(1)** |
|     **Defendants** | |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed by Defendants, BP Exploration & Production, Inc. and BP American Production Company (collectively "BP").[1] Plaintiff, Josip Piacun, opposes this motion.[2] For the following reasons, BP's motion for summary judgment[3] is **GRANTED**.

## BACKGROUND

This case arises out of the Medical Benefits Class Action Settlement Agreement ("Medical Benefits Settlement") in *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010* (commonly referred to as "MDL 2179").[4]

Mr. Piacun is an oyster fisherman and the owner of the oyster lugger, the M/V MISS ANGELA.[5] Following the April 20, 2010 spill, Mr. Piacun and his vessel were hired to participate in the clean-up operations as part of the so-called "Vessels of Opportunity" Program (referred to as the "VoO Program").[6] As part of his employment in the VoO Program, Mr. Piacun was actively involved in the clean-up of oil and other substances in

---

[1] R. Doc. 19.
[2] R. Doc. 20.
[3] R. Doc. 19.
[4] *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, No. 10-md-2179, R. Doc. 6427-1 (E.D. La. May 3, 2012) (hereinafter "Medical Benefits Settlement").
[5] R. Doc. 20, at 1.
[6] *Id.*

the coastal waters and marshes of St. Bernard Parish, including actively searching for oil and other substances in the St. Bernard marshes and waters.[7] Mr. Piacun alleges he personally participated in the retrieval of absorbent boom[s] saturated with oil and with substances, as part of this work, and regularly came into direct contact with oil and other substances.[8]

On August 27, 2015, Mr. Piacun filed a complaint against BP. Mr. Piacun's complaint alleges physical and psychological injuries sustained in connection with work he performed during clean-up operations following the April 20, 2010 DEEPWATER HORIZON oil spill. In his complaint, Mr. Piacun alleges that as a result of his employment under the VoO Program, he developed psychological, dermal, respiratory and cardiopulmonary complications due to his exposure to crude oil and chemical dispersants used by BP.[9] In a deposition on August 18, 2016, Mr. Piacun identified his four conditions: atrial fibrillation, anxiety, skin cancer, and a scalp rash.[10] Mr. Piacun has since affirmatively clarified he "is not pursuing a BELO claim for skin cancer or [scalp] rash,"[11] and now says his claim is for his physical condition of persistent atrial fibrillation.[12] On October 4, 2016, BP filed a motion for summary judgment arguing that, with respect to Mr. Piacun's claims regarding anxiety and atrial fibrillation, neither condition meets the requirements for a compensable "Later-Manifested Physical Condition" (LMPC), and therefore the injuries alleged are ineligible for compensation.[13]

---

[7] *Id.* at 1-2.
[8] *Id.* at 2.
[9] R. Doc. 1, at 3.
[10] *See* R. Doc. 19-3, at 2 (citing R. Doc. 19-5, at 5-6 (Deposition of Mr. Piacun pages 88-90)).
[11] R. Doc. 20, at 6 n.21; *see also* R. Doc. 34, at 1 ¶ 5 (Plaintiff, in his Second Restatement of Contested Material Facts, states he "is asserting BELO claims based on his atrial fibrillation and related anxiety [and he] has withdrawn his BELO claims based on skin cancer and scalp rash.").
[12] R. Doc. 20, at 4.
[13] R. Doc. 19.

## **LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[14] "An issue is material if its resolution could affect the outcome of the action."[15] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[16] All reasonable inferences are drawn in favor of the nonmoving party.[17] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the nonmoving party, no reasonable trier of fact could find for the nonmoving party, thus entitling the moving party to judgment as a matter of law.[18]

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[19] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the nonmoving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[20]

---

[14] FED. R. CIV. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[15] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[16] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[17] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[18] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).
[19] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[20] *Celotex*, 477 U.S. at 322–24.

If the dispositive issue is one on which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating there is no evidence in the record to establish an essential element of the nonmovant's claim.[21] When proceeding under the first option, if the nonmoving party cannot muster sufficient evidence to dispute the movant's contention that there are no disputed facts, a trial would be useless, and the moving party is entitled to summary judgment as a matter of law.[22] When, however, the movant is proceeding under the second option and is seeking summary judgment on the ground that the nonmovant has no evidence to establish an essential element of the claim, the nonmoving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[23] Under either scenario, the burden then shifts back to the movant to demonstrate the inadequacy of the evidence relied upon by the nonmovant.[24] If the movant meets this burden, "the burden of production shifts [back again] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule

---

[21] *Id.* at 331–32 (Brennan, J., dissenting); *see also St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (citing Justice Brennan's statement of the summary judgment standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986), and requiring the movants to submit affirmative evidence to negate an essential element of the nonmovant's claim or, alternatively, demonstrate the nonmovant's evidence is insufficient to establish an essential element); *Fano v. O'Neill*, 806 F.2d 1262, 1266 (citing Justice Brennan's dissent in *Celotex*, and requiring the movant to make an affirmative presentation to negate the nonmovant's claims on summary judgment); 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE §2727.1 (2016) ("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case." (internal citations omitted)).
[22] *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[23] *Celotex*, 477 U.S. at 332–33.
[24] *Id.*

56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)."[25] "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial."[26]

"[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports the claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[27]

## DISCUSSION

### I. MEDICAL BENEFITS CLASS ACTION SETTLEMENT AGREEMENT

The Medical Benefits Settlement resolved certain claims of individuals engaged as clean-up workers and residents of particular geographical boundaries in the Gulf of Mexico related to their exposure to oil and/or dispersants arising from the DEEPWATER HORIZON incident and subsequent response efforts.[28] On January 11, 2013, the Medical Benefits Settlement was given final approval by the *MDL 2179* court,[29] and on February 12, 2014, it became effective.[30]

---

[25] *Id.* at 333 n.3.
[26] *Id.*; *see also First National Bank of Arizona*, 391 U.S at 289.
[27] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[28] *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, No. 2179, 2016 WL 4091416, at *4 (E.D. La. Aug 2, 2016).
[29] *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, No. 10-md-2179, R. Doc. 8218 (E.D. La. Jan. 11, 2013).
[30] *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, 2016 WL 4091416, at *4.

Under the terms of the court approved Medical Benefits Settlement, class members surrendered their rights to sue BP for medical conditions related to the oil spill in returned for defined compensation benefits.[31] In addition, as the *MDL 2179* court explained:

> Medical Benefits Settlement class members ("Medical Class") who did not wish to be bound by the Medical Benefits Settlement were required to exclude themselves, or "opt out," pursuant to the procedures set forth in Section XI.E of the Medical Benefits Settlement and Paragraph 29 of the Court's Preliminary Approval Order concerning the Medical Benefits Settlement, as amended by the Court's Order extending the opt-out deadline to November 1, 2012. Thus, any plaintiff who is a member of the Medical Class and did not opt out by the deadline set by the Court is now bound by the Medical Benefits Settlement.[32]

Mr. Piacun did not opt out of the Medical Benefits Settlement.

## II.   Back-End Litigation Option ("BELO") Suits

Under the terms of the Medical Benefits Settlement, the Medical Class Members who did not opt out of the agreement surrendered their rights to sue BP for medical conditions related to the oil spill in return for defined compensation benefits.[33] One exception, however, allows class members who did not opt out of the Medical Benefits Settlement to bring suit against BP for "Later-Manifested Physical Conditions" ("LMPCs").[34] An LMPC is defined by the Medical Benefits Settlement as:

> A physical condition that is first diagnosed in a MEDICAL BENEFITS SETTLEMENT CLASS MEMBER after April 16, 2012, and which is claimed to have resulted from such MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S exposure to oil, other hydrocarbons, or other substance released form the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or exposure to dispersants and/or decontaminants used in connection with the RESPONSE activities, where such exposure occurred on or prior to September 30, 2010, for ZONE A RESIDENTS; on

---

[31] *See* Medical Benefits Settlement, at 106.
[32] *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, 2016 WL 4091416, at *5 (internal citations omitted).
[33] *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, 2016 WL 4091416, at *5 (internal citations omitted).
[34] Medical Benefits Settlement, at 60-73.

or prior to December 31, 2010, for ZONE B RESIDENTS; and on or prior to April 16, 2012, for CLEAN-UP WORKERS.[35]

The Medical Benefits Settlement refers to lawsuits seeking recovery for LMPCs as "Back-End Litigation Option" ("BELO") suits.[36]

### a. Initial Proceeding Requirements in BELO Suits

On January 30, 2015, the *MDL 2179* court issued its BELO Cases Initial Proceedings Case Management Order.[37] In its order, the *MDL 2179* court explained:

> At a minimum, a BELO complaint filed after entry of this case management order must allege: (A) the particular United States District Court in which plaintiff contends venue is most appropriate, including (i) plaintiff's current judicial district of residence and (ii) plaintiff's judicial district of residence at the time of the alleged exposure; (B) identification of plaintiff's physical/medical condition allegedly caused by the exposure; (C) the date of first diagnosis of that condition; (D) the general circumstances of plaintiff's exposure, including (i) identification of the agent to which plaintiff was exposed (e.g. oil, chemical dispersant, etc.); (ii) location[s] of where the alleged exposure or other injuries occurred; (iii) level duration of exposure, if known; and (iv) whether plaintiff's exposure occurred while he was an oil spill cleanup worker and, if so, the name and address of his oil spill cleanup direct employer.[38]

Stated differently, to pursue a BELO claim, a plaintiff must sufficiently allege in his or her complaint that (1) he or she has a physical condition; (2) the physical condition was first diagnosed after April 16, 2012; and (3) that he or she claims the physical condition resulted from exposure to oil or other hydrocarbons, and/or dispersants or decontaminants used in connection with DEEPWATER HORIZON response activities.[39]

As set forth in the case management order, the parties generally are prohibited from filing motions during the initial proceedings stage. Defendants may, however, file a

---

[35] *Id.* at 20-21.
[36] *Id.* at 60-73.
[37] *See* R. Doc. 3.
[38] *Id.* at 3.
[39] Medical Benefits Settlement, at 20-21, 61.

7

motion "to dismiss an individual BELO complaint with<u>out</u> prejudice for failure to complete the conditions precedent to filing such a complaint as required in the Settlement Agreement."[40] In this case, no such motion was made. The parties stipulated venue for Mr. Piacun's claim in the Eastern District of Louisiana[41] and the claim was reassigned to this Court on January 11, 2016.[42]

Once transferred or reassigned, the BELO claim proceeds as governed by the Medical Benefits Settlement. As set forth in the case management order, "All motions prohibited from filing [during the initial proceedings] will <u>not</u> be deemed waived and are specifically preserved for later filing before any subsequently assigned presiding judge."[43]

### b. Motion Practice

BP has now filed a motion for summary judgment to dismiss Piacun's claim for failing to satisfy the elements of a valid BELO claim as set forth in the Medical Benefits Settlement.[44] To prevail at trial, the BELO claimant must prove the following elements:

i. The fact of diagnosis (i.e., that the claimant was correctly diagnosed with the alleged physical condition after April 16, 2012);

ii. The amount and location of oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES and the timing thereof;

iii. The level and duration of the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S exposure to oil, other hydrocarbons, and other substances

---

[40] R. Doc. 3, at 7 (emphasis in original).
[41] R. Doc. 9.
[42] R. Doc. 10.
[43] R. Doc. 3, at 7 (emphasis in original).
[44] R. Doc. 19.

8

        released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES, and the timing thereof;

iv. Whether the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S alleged LATER-MANIFESTED PHYSICAL CONDITION was legally caused by his or her exposure to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants use in connection with the RESPONSE ACTIVITIES;

v. Whether there exist any alternative causes for the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER'S alleged LATER-MANIFESTED PHYSICAL CONDITION, including, but not limited to, exposure to other substances or sources of contaminants and/or toxins; and

vi. The amount, if any, of compensatory damages to which the MEDICAL BENEFITS SETTLEMENT CLASS MEMBER is entitled.[45]

In its motion for summary judgment, BP argues Piacun cannot satisfy his burden of proving that his atrial fibrillation is a compensable LMPC.[46] First, BP argues Piacun's atrial fibrillation was not first diagnosed after April 16, 2012, as required by the Medical Benefits Settlement.[47] Second, BP argues Piacun's atrial fibrillation claim is not a compensable LMPC under the Medical Benefits Settlement because it was not caused by toxic exposure but instead, the "perception of stress related to the dealings with the BP

---

[45] *Id.* 69-70.
[46] R. Doc. 19-3, at 4.
[47] *Id.* (citing R. Doc 19-5, at 7, 9).

oil spill."[48] According to BP, "Piacun candidly admits that [his atrial fibrillation did not get] worse because of exposure to oil or any other toxic substance, as would be required for a BELO suit. Instead, Piacun claims that his exposure to media and news accounts of the spill worsened his atrial fibrillation."[49]

Plaintiff responds by arguing his persistent atrial fibrillation is a physical condition and that it was first diagnosed after April 16, 2012.[50] Although Plaintiff concedes he had experienced episodes of atrial fibrillation prior to his involvement in the VoO program, he states his "persistent atrial fibrillation was new and was first diagnosed" by Dr. McKinnie on September 26, 2012.[51] Plaintiff also argues his "persistent atrial fibrillation resulted from his anxiety related to his exposure to oil and other substances during clean-up operations."[52]

It is undisputed atrial fibrillation and persistent atrial fibrillation are cognizable physical conditions under the Medical Benefits Settlement.[53]

### A. Was Piacun Correctly Diagnosed with a Physical Condition After April 16, 2012?

It is uncontested that Piacun was diagnosed with atrial fibrillation prior to April 20, 2010.[54] As a result, BP argues Piacun cannot demonstrate that his atrial fibrillation[55] was first diagnosed after April 16, 2012.[56] In response, Piacun argues that prior to the

---

[48] *Id.*
[49] R. Doc. 19-3, at 4.
[50] R. Doc. 20, at 4.
[51] *Id.*
[52] *Id.* at 5.
[53] In his statement of contested facts, Mr. Piacun states, "Persistent atrial fibrillation is a physical condition." R. Doc. 20-1, at 2 ¶ 12. Defendants do not address this issue in its motion or reply.
[54] *See* R. Doc. 34, at 2 ¶ 6.
[55] Throughout its motion, BP also discusses Mr. Piacun's claim for anxiety. *See, e.g.*, R. Doc. 19-3, at 1. As previously stated, however, Mr. Piacun has clarified his claim is for persistent atrial fibrillation. *See* R. Doc. 20, at 4.
[56] *See* R. Doc. 19-3, at 4.

10

spill, his "atrial fibrillation had been controlled through medication."[57] According to Piacun, "Prior to this time, [he] had been experiencing only intermittent episodes of atrial fibrillation."[58] Plaintiff, in his second restatement of contested material facts, maintains "his atrial fibrillation and anxiety recurred and became persistent *after* April 16, 2012,"[59] and that he was diagnosed as persistent atrial fibrillation by Dr. James McKinnie on September 26, 2012.[60]

Plaintiff cites to a record from his visit with Dr. McKinnie on September 26, 2012 to raise an issue of fact as to whether he was first diagnosed with persistent atrial fibrillation before or after April 16, 2012.[61] Nowhere in this medical record, however, does it state that Plaintiff has been *newly* diagnosed with *persistent* atrial fibrillation. The record only states "new buck [sic] in afib!"[62] Nowhere, however, in the section of the deposition transcript provided does Dr. McKinnie testify that he diagnosed Mr. Piacun with *persistent* atrial fibrillation or that this diagnosis first occurred after April 16, 2012. Plaintiff has not come forward with summary judgment evidence to raise a genuine issue of material fact as to whether he was diagnosed with persistent atrial fibrillation and, if so, when. Even if he had, however, BP would still be entitled to summary judgment.[63]

---

[57] R. Doc. 20, at 3.
[58] *Id.* at 3 n.6.
[59] R. Doc. 34, at 2 ¶ 6.
[60] R. Doc. 20, at 4
[61] *See id.* at n.14 (citing R. Doc. 20-4).
[62] R. Doc. 20-4, at 2. *See also, e.g.*, R. Doc. 20, at 4, n.15 (citing to the October 3, 2016, deposition of Dr. McKinnie, now filed as R. Doc. 20-5).
[63] The Court notes that under the agreed upon terms of the Medical Benefits Settlement, it is clear a plaintiff may bring a BELO claim for a preexisting condition exacerbated by his or her exposure to oil and/or other substances so long as the conditions meet the other requirements of a LMPC. *See In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico*, 295 F.R.D. 112, 159 (referencing *In re Oil Spill by the Oil Rig "Deepwater Horizon" OBJECTION TO SETTLEMENT*, No. 10-cv-777, R. Doc. 92, at 15-16.).

### B. Was Plaintiff's LMPC Legally Caused By His Exposure to Oil and/or Other Substances Used in Connection with DEEPWATER HORIZON Response Activities?

It is undisputed that the stress allegedly causing Mr. Piacun's atrial fibrillation was not caused by his exposure to oil and/or other substances during clean-up operations but instead is a reaction to news reports of others associated with the clean-up efforts developing medical conditions as a result of their exposure to oil and/or other substances during clean-up operations.[64] In his opposition to BP's motion for summary judgment, Piacun states that news reports of other clean-up workers getting sick "caused him to experience anxiety which, in turn, caused a recurrence and persistence of his atrial fibrillation."[65] As the Court appreciates it, Piacun's argument appears to be that as a result of his exposure to oil and other substances during his involvement in clean-up operations, these news reports made him anxious that he too would develop a medical condition as a result of his exposure. The sole question before this Court is whether BP is entitled to a judgment as a matter of law because a physical condition caused by anxiety resulting from news reports about other clean-up workers getting sick is not covered under the terms of the BELO portion of the Medical Benefits Settlement.

While a claimant in a BELO lawsuit need not prove liability, a claimant "must prove causation."[66] The BELO section of the Medical Benefits Settlement explicitly reserves the right for BP to challenge at trial whether a BELO plaintiff's LMPC "was *legally caused* by

---

[64] *See* R. Doc. 20-1 R. Doc. 20-1, at 2 ¶ 5 ("Mr. Piacun began to experience stress and anxiety as a result of concerns relating to the health effects he may experience resulting from his exposure to oil, other hydrocarbons, dispersants and other substances during the clean-up operations."); R. Doc. 34, at 2 ¶ 7 ("Mr. Piacun testified further that these reports caused him to experience anxiety which, in turn, caused a recurrence and persistence of his atrial fibrillation.").
[65] R. Doc. 34, at 2 ¶ 7.
[66] *In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico, on April 20, 2010*, No. 10-md-2179, R. Doc. 13733 (E.D. La. Nov. 26, 2014).

his or her *exposure* to oil, other hydrocarbons, and other substances released from the MC252 WELL and/or the *Deepwater Horizon* and its appurtenances, and/or dispersants and/or decontaminants used in connection with the RESPONSE ACTIVITIES."[67] In addition, BP may challenge "[w]hether there exists any alternative causes" for the alleged LMPC.[68]

The Medical Benefits Settlement "and the RELEASE hereunder shall be interpreted in accordance with General Maritime Law."[69] In the context of General Maritime Law, The Fifth Circuit has explained, "Legal cause is something more than 'but for' causation, and the negligence must be a 'substantial factor' in the injury."[70] "The term 'substantial factor' means more than 'but for negligence, the harm would not have resulted.'"[71]

The Court finds the Medical Benefits Settlement unambiguously requires that a BELO claimant demonstrate that *exposure* to oil and/or other substances legally caused his or her physical condition in order to receive compensation for a LMPC. The BELO section of the Medical Benefits Settlement does not provide recovery for a physical condition not legally caused by a BELO claimant's exposure to oil and/or other substances used in connection with DEEPWATER HORIZON response activities. By his own admission, Plaintiff's persistent atrial fibrillation was caused by his anxiety following news and reports of other people's conditions resulting from their exposure to oil and/or other substances.[72]

---

[67] Medical Benefits Settlement, at 70 (emphasis added).
[68] *Id.*
[69] *Id.* at 192.
[70] *Thomas v. Express Boat Co.*, 759 F.2d 444, 448 (5th Cir. 1985).
[71] *In re Specialty Marine Servs. Inc.*, No. CIV.A. 13-6379, 2014 WL 6896038, at *2 (E.D. La. Dec. 8, 2014) (quoting *Spinks v. Chevron Oil Co.*, 507 F.2d 216, 223 (5th Cir. 1975)).
[72] *See, e.g.*, R. Doc. 34, at 2 ¶ 7.

At trial, Piacun would have the burden of proving that his atrial fibrillation and stress were *legally caused* by *his* exposure to oil and/or other substances in connection with his participation in the VoO program. The Court finds BP has put forward sufficient affirmative evidence that negates this essential element of Piacun's claim. Plaintiff has not come forward with evidence to show that this is a genuine factual issue for trial. As a result, the Court finds BP is entitled to summary judgment as a matter of law that Plaintiff's physical condition was not legally caused by his exposure to oil and/or other substances in connection with his participation in the VoO program.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that BP's motion for summary judgment[73] is **GRANTED**. As such, the Plaintiff's claim asserted against the Defendants BP Exploration & Production Inc. and BP America Production Company is hereby **DISMISSED WITH PREJUDICE**.[74]

New Orleans, Louisiana, this 12th day of December, 2016.

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[73] R. Doc. 19.
[74] On November 15, BP filed a motion *in limine* to exclude the testimony of Dr. James J. McKinnie. R. Doc. 28. Accordingly, BP's motion *in limine* is denied as moot.